UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA J BRADY,

          Plaintiff,

v.                                                  Case No. 22-cv-0187-bhl

VERIZON WIRELESS (VAW) LLC,

          Defendant.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY CASE

      On January 19, 2022, Plaintiff Joshua Brady, representing himself, filed a putative class-action complaint in state court claiming that Defendant Verizon Wireless Services, LLC[1] failed to open a fraud investigation or credit him for costs he incurred after he notified Verizon that an unauthorized device had been issued to his account. ECF No. 4 at 4–20. Verizon removed the case to federal court and filed an answer. ECF Nos. 1, 5, 9. It then moved to compel arbitration and for a stay of the case pending completion of the arbitration. ECF No. 17. Brady opposes the stay, insisting that Verizon waived its right to arbitrate and that the dispute falls outside the scope of the arbitration agreement. ECF No. 20. For the reasons given below, the Court will grant Verizon's motion, order the parties to arbitrate, and stay all dates and deadlines in the case.

## BACKGROUND

      Brady alleges that on or about January 31, 2019, at the same time his cell phone service was temporarily interrupted, his carrier, Verizon, issued an unknown party a cell phone under his account. ECF No. 4 at 5–6. He made a fraud claim with Verizon, which responded by restoring his service and telling him no charges would be added to his account. *Id.* According to Brady, this proved false as overcharges nevertheless appeared on a later invoice. *Id.* Verizon credited him only part of the overcharge and refused to credit a $31.09 remainder. *Id.* at 6–9. It also never opened a fraud investigation. *Id.*

---

[1] The complaint names Verizon Wireless (VAW) LLC as the defendant. ECF No. 4 at 4–20. The party appearing as the defendant states its correct name is Verizon Wireless Services, LLC. *See, e.g.*, ECF No. 14; ECF No. 18 at 1. Brady does not dispute this. The parties have not stipulated to this change.

Brady does not dispute that his relationship with Verizon is governed by written contractual documents. ECF No. 19. These documents show that Brady established his Verizon account on or about December 2, 2013, purchased a mobile device in July 2017, and executed retail installment contracts in connection with purchases of other mobile devices. *See* ECF No. 18 at 3. These contracts include language by which Brady assented to Verizon's Customer Agreement. *See id.* at 3–4. The agreement contains an Arbitration Agreement that states, "EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US . . . INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS[.]" ECF No. 19-2 at 7 (capitalization in original). In February 2019, Brady converted his account to a business account, executing a Major Account Agreement that similarly states, "We both agree to arbitrate any dispute that arises under or relates to this Agreement." ECF No. 19-6 at 6–7; *see* ECF No. 18 at 5.

## PROCEDURAL HISTORY

Brady filed his complaint in state court on January 19, 2022. ECF No. 4 at 4–20. Verizon removed the action to federal court on February 14. ECF No. 1. After removal, Verizon repeatedly asserted its right to compel arbitration of the parties' dispute. In its February 22 answer and March 15 amended answer, Verizon pleaded as its first affirmative defense that it was "reserv[ing] the right to compel contractual arbitration." ECF No. 5 at 14; ECF No. 9 at 14. Similarly, in the parties' April 8 jointly filed Rule 26(f) report, Verizon included language concerning its arbitration rights: "Defendant hereby asserts and expressly reserves its right to compel arbitration in this matter. Defendant further anticipates that it will file its Motion to Compel Arbitration & Stay Case on or before the Scheduling Conference . . . on April 15, 2022." ECF No. 12 at 2. The report also stated, "Plaintiff opposes any Motion to Compel Arbitration as waived by the Plaintiff when removing this case from Milwaukee County Circuit Court to this court's jurisdiction." *Id.* The report refers to Verizon's "impending" motion to compel throughout and includes Verizon's "assert[ions] that all discovery should be stayed pending the ruling on [the motion]." *Id.* at 2, 3, 5, 6, 7.

At an April 15, 2022 scheduling conference, Verizon's counsel confirmed the defendant still intended to file a motion to compel but had experienced delays in producing a declaration to

support the motion. ECF No. 14 at 6:00–7:50. The Court ordered Verizon to file the motion on or before May 2, 2022. ECF No. 15. Verizon finally filed its motion to compel arbitration on April 29. ECF No. 17. The motion has been fully briefed since June 3. *See* ECF No. 21.

## LEGAL STANDARD

Verizon's motion to compel arbitration is brought pursuant to Sections 3 and 4 of the Federal Arbitration Act.[2] 9 U.S.C. §§ 3, 4. Under the FAA, if "the parties have an arbitration agreement and the asserted claims are within its scope," the court must compel arbitration and stay the case. *Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170, 1173 (E.D. Wis. 2017) (citing *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). While "[t]he FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet[,] . . . courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing cases); *see also Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 725 (N.D. Ill. 2017); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "The court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party." *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (citation omitted).

## ANALYSIS

Brady does not dispute that the parties agreed to a valid arbitration agreement in Verizon's Customer Agreement and Major Account Agreement. Nor does he dispute the terms of the agreement. But he nevertheless opposes Verizon's motion, primarily on grounds that Verizon has waived or forfeited its right to arbitrate. ECF No. 20 at 4–7. He also argues his claims fall outside the scope of the agreement. *Id.* 7–8. Because both arguments fail, Verizon's motion will be granted.

**I.    Verizon Has Not Waived Its Right to Arbitrate.**

Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733

---

[2] Verizon erroneously states the motion is brought pursuant to Section 2 of the FAA. *See* ECF No. 17.

(1993)). "Like other contractual rights, . . . the right to arbitrate is waivable." *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020) (citing *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011)). Where a party does not expressly waive the right to arbitrate, a court may infer a waiver if, "based on all the circumstances, the party . . . has acted inconsistently with the right to arbitrate." *Id.* (quoting *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002)); *see also St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 587–88 (7th Cir. 1992). Under the FAA, any doubts concerning an allegation of waiver must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Kiefer Specialty Flooring, Inc. v Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999).

Brady argues Verizon has waived its right to arbitrate through the steps it has taken to litigate this case in federal court. ECF No. 20 at 4–7. He points out that Verizon filed a notice of removal, which he contends was an intentional waiver of its right to arbitrate and an election to proceed before a non-arbitral tribunal. Brady further contends that Verizon thereafter, over the course of three months, continued to act inconsistently with a right to arbitrate. It filed an answer, an amended answer, and a corporate disclosure; met and conferred with Brady; responded to an order to show cause; participated in creating a joint Rule 26(f) report; attended the telephonic scheduling conference; and served Brady with initial disclosures. *Id.* at 4–5. Under the totality of the circumstances of the case, Brady argues, these actions constitute an implicit waiver of the right to arbitrate.[3]

Verizon disputes any waiver. It argues that even if its removal of the complaint to federal court could be construed as a presumptive waiver under Seventh Circuit caselaw, it rebutted that presumption by expressly reserving its right to arbitrate at every step in the litigation process thereafter—in its answer, in its amended answer, in the joint Rule 26(f) report, and at the scheduling conference. ECF No. 21 at 3–8. Verizon points out it has not taken or participated in any deposition, propounded any discovery against any party, or brought any motions beyond this

---

[3] Brady also argues he and the putative class will suffer prejudice if the Court orders arbitration. ECF No. 20 at 7. Courts "seldom" consider prejudice in the waiver analysis. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). But, in any event, Brady does not argue that Verizon's allegedly delayed attempts to arbitrate will cause prejudice. Instead, he argues that *any* enforcement of the arbitration agreement will cause prejudice. This argument is irrelevant to the waiver analysis. To the extent Brady is arguing the arbitration agreement is unconscionable or otherwise unenforceable, his argument is undeveloped.

pending motion to compel arbitration filed a mere three months after removal. *Id.* at 6–7. This, Verizon insists, is not the conduct of a party seeking to litigate rather than arbitrate. *Id.*

Contrary to Brady's urgings, the record does not show that Verizon intentionally relinquished or abandoned its right to arbitrate. Perhaps under *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995), Verizon's removal of the complaint to federal court was a presumptive waiver. *Id.* at 390. But, as *Cabinetree* itself instructs, this presumption does not end the analysis and the Court must look to the totality of the circumstances. *Id.* at 390–91; *see also Brickstructures* 952 F.3d at 891. Those circumstances demonstrate quite clearly that Verizon did not intend to waive its arbitration rights and no reasonable person would have thought otherwise. At every other step in the litigation, Verizon has clearly stated its intent to arbitrate. And it filed its motion by the deadline set by the Court—before making discovery requests or filing dispositive motions. *See Cooper v. Asset Acceptance, LLC*, 532 F. App'x 639, 642 (7th Cir. 2013) (quoting *Cabinetree* 50 F.3d at 390) ("[A]ny presumption of waiver due to [the party's] removal of the case to federal court is rebuttable where a party's activities did not 'signify an intention to proceed in a court to the exclusion of arbitration.'").

Verizon's conduct stands in marked contrast to the conduct from which courts have inferred a waiver. In *Cabinetree*, a party not only removed the action to federal court, but then also participated in discovery that caused the opposing party to produce thousands of documents, and only moved to compel arbitration eight months after removal. 50 F.3d at 389. In *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648 (7th Cir. 2000), the party waited a year, and until after the court had dismissed its complaint, before moving to arbitrate. *Id.* at 651. In *St. Mary's*, 969 F.2d 585, the party waited ten months, and after the court had denied its motion to dismiss or for summary judgment. *Id.* at 589.

This case is more analogous to *Cooper*, 532 F. App'x 639, and *Oliver Wine Co. v. Ball Metal Beverage Container Corp.*, No. 1:13-CV-00062-RLY, 2013 WL 5603937 (S.D. Ind. Oct. 11, 2013). In *Cooper*, the Seventh Circuit affirmed a district court's conclusion that a party had not shown a clear intent to litigate when it removed an action to federal court, participated in scheduling conferences and discovery, but waited until its motion to dismiss was denied before moving to compel arbitration. 532 F. App'x at 640–42. In *Oliver Wine*, a district court found no waiver when the party removed the action to federal court, filed an answer asserting its right to arbitrate as an affirmative defense, notified the opposing party it would file a motion to compel

arbitration if settlement talks failed, and then filed the motion six months after the removal. 2013 WL 5603937 at *2, *4–5. Certainly, Verizon's actions show less evidence of an intent to litigate than the parties in both of these cases.

## II. Verizon Did Not Forfeit Its Right to Arbitrate by Answering the Complaint Rather Than Moving to Dismiss.

Brady also insists that Verizon forfeited its right to arbitrate by answering the complaint. ECF No. 20 at 7–8. A motion to compel arbitration, he argues, is effectively a motion for improper venue under Fed. R. Civ. P. 12(b)(3), and a defense of improper venue must be raised before pleading. *See* Fed. R. Civ. P. 12.

This argument can be dismissed outright. The Seventh Circuit has confirmed that "nothing prevents a defendant [who is seeking to compel arbitration] from filing an answer that demands arbitration and offers other reasons why plaintiffs should not receive judicial relief." *Cent. Illinois Carpenters Health & Welfare Tr. Fund v. Con-Tech Carpentry*, LLC, 806 F.3d 935, 938 (7th Cir. 2015) (citing *Kawasaki*, 660 F.3d at 993–98); *see, e.g.*, *Oliver Wine*, 2013 WL 5603937, at *2, *4–5.

## III. Brady's Asserted Claims Fall Within the Broad Scope of the Arbitration Agreement.

Brady finally argues that his claims fall outside of the scope of the arbitration agreement because the overcharge made on his account was caused by some third person not a party to the contracts between Brady and Verizon. ECF No. 20 at 7–8. This too is a non-starter.

In Wisconsin, courts "give contract terms their plain or ordinary meaning." *Pronschinske Tr. Dated Mar. 21, 1995 v. Kaw Valley Co., Inc.*, 899 F.3d 470, 473 (7th Cir. 2018) (citing *Huml v. Vlazny*, 716 N.W.2d 807, 820 (2006). The arbitration agreement in the Major Account Agreement covers "any dispute that arises under or relates to [the Major Account Agreement]." ECF No. 19-6 at 6–7; *see* ECF No. 18 at 5. A dispute about an alleged overcharge on an account governed by the Major Account Agreement is a dispute relating to the Major Account Agreement.[4] Moreover, where it is clear that "the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns*, LLC, 666 F.3d 1027, 1032–33 (7th Cir. 2012) (citing *Moses*, 460 U.S. at 24–25; *Miller v. Flume*, 139 F.3d 1130, 1136 (7th

---

[4] Similarly, the arbitration agreement in the Customer Agreement covers "any dispute that in any way relates to or arises out of [the Customer Agreement]." *See* ECF No. 19-2 at 7 (capitalization removed). A dispute about an alleged overcharge on an account governed by the Customer Agreement is a dispute relating to the Customer Agreement.

Cir. 1998)). "Such a presumption is particularly applicable where the clause is . . . broad[.]" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The Seventh Circuit "read[s] both 'arising out of' and 'relating to' language broadly," interpreting "arising out of" to "reach[] all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore*, 666 F.3d at 1033.

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that the motion to compel arbitration and stay case, ECF No. 17, is **GRANTED**. The parties are ordered to arbitrate the dispute. All dates and deadlines are stayed.

Dated at Milwaukee, Wisconsin on July 19, 2022.

                                                          s/ *Brett H. Ludwig*
                                                          BRETT H. LUDWIG
                                                          United States District Judge